IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| vs. | ) ) ) **CRIMINAL NO. 9-187** |
| ROBERT SMITH, | ) ) |
| Defendant. | ) ) ) |

AMBROSE, United States Senior District Judge

## MEMORANDUM ORDER OF COURT

### I. Introduction

Defendant has filed a *pro se* Emergency Motion for Reduction of Sentence and/or Modification Pursuant to 18 U.S.C. 3582(c)(1)(A) as well as a counseled Supplemental Brief in Support of Motion. (ECF 196) He seeks compassionate release for "extraordinary and compelling reasons" pursuant to the First Step Act, 18 U.S.C. 3582(c)(1)(A)(i). He contends that his medical conditions render him particularly susceptible to the COVID-19 virus while incarcerated. The Government has filed a Response. (ECF 202) The Defendant thereafter filed a counseled Reply. (ECF 203) After careful consideration of the submissions, and for the reasons set forth below, the Motion is granted.

### II. Background

On December 21, 2009, the Defendant entered a plea of guilty to Count 1 of the Indictment, charging him with conspiracy to distribute and possession with intent to distribute five (5) kilograms or more of cocaine in violation of 21 U.S.C. 846, 841(a)(1) and 841(b)(1)(A)(ii). (ECF 52). On December 16, 2010, this Court sentenced the Defendant to 188 months of incarceration followed by five (5) years of supervised release. (ECF 100) The Defendant's projected release date is September 13, 2022. (ECF 188) The Defendant was accepted into the Residential Drug

1

and Alcohol Program ("RDAP") and was *en route* to Montgomery, Alabama when the COVID-19 epidemic struck. He was at FTC Oklahoma when his transfer to Montgomery was halted. He has been in Oklahoma since February 27, 2020 and remains there. If the Defendant had completed the RDAP program, his release date would move up by one year. (ECF 196)[1] The Defendant seeks a reduction of sentence to "time served."[2]

### III. Analysis

Prior to the passage of the First Step Act, only the Director of the Bureau of Prisons could seek a reduction of sentence. *United States v. Handerhan*, 789 Fed. Appx. 924, 925 (3d Cir. 2019). Section 603(b) of the First Step Act, entitled "Increasing the Use and Transparency of Compassionate Release," permitted prisoners the right to file compassionate release motions with the court "so long as they first ask the BOP to file a motion on their behalf and then either exhaust the BOP's administrative appeal process or wait 30 days, whichever comes first." *United States v. Somerville*, 12cr225, 2020 WL 2781585, at * 2 (W.D. Pa. May 29, 2020), *citing* 18 U.S.C. § 3582(c)(1); First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018). The First Step Act thus empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). The statute provides that:

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the

---

[1] The Government contends that the Bureau of Prisons ("BOP") is starting to move forward with inmate transports but has not indicated that the Defendant has been moved to Montgomery or has begun the RDAP program. (ECF 202)

[2] The Defendant asks for "home confinement" in the alternative but this Court lacks the authority to order an inmate transferred to home confinement.

>       unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>           (i)     extraordinary and compelling reasons warrant such a reduction….
>
>       And that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission….

18 U.S.C. §3582(c)(1)(A). Because the Defendant has exhausted his administrative remedies, I turn to a consideration of whether, in addition to considering the factors set forth in section 3553(a), the Defendant has established "extraordinary and compelling reasons" in support of compassionate release."[3]

    (a) Extraordinary and Compelling Reasons

The Sentencing Commission issued a policy statement related to § 3582(c)(1)(A). It provides, in part, that: "the court may reduce a term of imprisonment … if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that – (1)(A) extraordinary and compelling reasons warrant the reduction." U.S.S.G. § 1B1.13. The policy statement then identifies four categories of "extraordinary and compelling reasons." They consist of: (1) a defendant suffering from a terminal illness or other medical condition that substantially diminishes the defendant's ability to provide self-care; (2) the defendant's age (at least 65 years of age coupled with a serious deterioration of physical or mental health and who has served at least 10 years or 75 percent of the term of imprisonment); (3) the defendant's family circumstances; and (4) other reasons as determined by the Director of the Bureau of Prisons. U.S.S.G. 1B1.13 Cmt., App. Note 1(A)-(D).

The Defendant bears the burden of proving that extraordinary and compelling reasons exist. *United States v. Adeyemi*, 2020 WL 3642478, * 16 (E.D. Pa. July 6, 2020) (citations

---

[3] Before a prisoner can file a compassionate release motion, administrative rights must be exhausted. The Defendant proffered emails in which he asked the BOP for early release. (ECF 188) The Government concedes that the Defendant's Motion is ripe for consideration. (ECF 202, p. 8)

3

omitted). The Defendant has not indicated that he has a terminal illness or medical condition that substantially diminishes his ability to provide self-care; he is not at least 65 years old; nor has he argued that his family circumstances merit a reduction in sentence.[4] Consequently, it appears as though the Defendant seeks relief under the "catch-all" provision – "other reasons" as determined, not by the BOP but by the Court. The Defendant contends that his medical condition, in light of the COVID-19 pandemic, coupled with his exemplary prison record, his efforts at rehabilitation, and the undisputed fact that, had he been able to timely commence enrollment in the RDAP program he would be entitled to earlier release, entitles him to a reduction of sentence. The Government does not address relief under the "catch-all" provision.[5]

There is some dispute as to the continued applicability of the policy statement and related commentary. It appears "in the commentary to the 2018 version of 1B1.13. The Sentencing Commission has not yet amended 1B1.13 or its commentary to account for the First Step Act." *Handerhan*, 789 Fed. Appx. at 925, n. 2, *citing, United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, at * 2 (D. Me. July 11, 2019). I note that a "majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] … does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." *United States v. Rodriguez*, 2020 WL 1627331, at * 4 (E.D. Pa. Apr. 1, 2020) (citations omitted). I find the *Rodriguez* court's analysis of the issue to be persuasive. *See also*, *United States v. Somerville*, 12cr225, 2020 WL 2781585, at * 6-7 (W.D. Pa. May 29, 2020) (finding that the "catch-all" provision under (D) permits the court the authority to independently assess whether there are "extraordinary and compelling reasons.") (citations omitted) and *United States v. Adeyemi*, No. 6-124, 2020 WL 3642478, * 1 (E.D. Pa. July 6, 2020)

---

[4] In the event that the Defendant is seeking relief under U.S.S.G. 1B1.13 Cmt., App. Note 1(A), I decline to grant the relief. The Defendant has not proffered evidence that his asthma has prevented him from providing self-care.
[5] The Government analyzes the Defendant's request for relief under the first example of an extraordinary and compelling reason – the Defendant's suffering from a terminal illness or other medical condition that impedes his ability to provide self-care.

("we do not agree sentencing policy marginalizes judges' ability to address 'other' reasons so long as we are consistent with the Sentencing Commission's policy. We may consider these issues consistent with federal law and policy since December 2018. After the incarcerated person exhausts his request for compassionate release with the Bureau of Prisons, we may apply the same long-established factors determined by the Director of the Bureau to find extraordinary and compelling reasons with the Bureau of Prisons to find extraordinary and compelling reasons for compassionate release other than, or in combination with, the three defined grounds.")

The question before me, then, is whether the Defendant has established extraordinary and compelling circumstances under this catch-all provision. The Defendant alleges as follows:

> Mr. Smith's Presentence Report, prepared in 2009, indicated several health conditions: asthma, a heart murmur, and a possible heart defect. (PSR ¶ 51.) The BOP records show that his asthma persisted throughout the years, currently requiring once a day steroid treatment (Mometasone Furoate Inhaler) and four times a day bronchodilator treatment that relaxes muscles in the airways and increases air flow to the lungs (Albuterol). (Exhibit B; Exhibit C.) Mr. Smith also suffers from allergic rhinitis, a chronic respiratory disease. (Exhibit C.)

(ECF 196, p. 11) The Government acknowledges the Defendant's prescriptions, but suggests that the Defendant has not suffered from asthma since he was 18. (ECF 202, p. 4) I am not convinced by the Government's argument, particularly in light of its concession that the Defendant's statements regarding asthma likely occurred during a general screening at an earlier date and are simply repopulated in each record. (ECF 202, p. 404 n. 1) Instead, I rely on the current prescriptions the Defendant takes to establish that he suffers from asthma and allergic rhinitis. The CDC currently indicates that people who suffer from moderate to severe asthma might be at an increased risk for severe illness from COVID-19. https://www/cdc/gpv/coronavirus/2019-ncov/need-extra-precutions/people-with-medical-conditions.html
I am unable to gauge whether the Defendant's asthma is mild, moderate or severe. There is no indication regarding attacks or the frequency of attacks, or of nighttime awakenings. Nor has the Defendant indicated that his condition interferes with normal activity. There are no reports

regarding his lung function or any medical professional categorizing the Defendant's asthma as mild, moderate or severe. The National Heart, Lung, and Blood Institute's Asthma Care Quick Reference Guide suggests that one has "moderate asthma" where the individual suffers from daily symptoms, experiences nighttime awakenings more than once a week, uses an albuterol rescue inhaler on a daily basis, and experiences some limitation of normal activities. See https://www.nhlbi.nih.gov/files/docs/guidelines/asthma_qrg.pdf I am mindful, however, that supporting medical records are not available to the Defendant. Officials at FTC Oklahoma City responded to the Defendant's request for medical records by instructing him to "[p]lease make this request after you have transferred to your assigned facility." (ECF 188, Ex. 1)[6] In the absence of the Defendant's medical records, which are not due to any failing on the Defendant's part, I find the daily medications the Defendant takes to be persuasive.

However, the Defendant's asthma, alone, is not sufficient grounds for finding extraordinary and compelling reasons to warrant a reduction in sentence. Pertinent here is the discussion in *United States v. Statom*, No. 08-20669, 2020 U.S. Dist. LEXIS 89361, at *6-7 (E.D. Mich. May 21, 2020), which involved an asthmatic defendant's motion for compassionate release:

> The Court recognizes that asthma places one at a greater risk for complications from COVID-19, and does not minimize the serious risks posed to incarcerated persons. Nonetheless, [T]he court can only speculate as to whether COVID-19 is an immediate threat to Defendant at his current location. … The BOP has instituted extensive precautionary measures to mitigate the spread of COVID-19 across the federal prison system. … The court must predict whether COVID-19 will spread within FCI Terre Haute despite precautionary protocols, further whether Defendant will contract COVID-19, and finally whether Defendant will develop serious symptoms, if any symptoms at all.

---

[6] The Government points to the Acting Warden's denial of compassionate release dated April 23, 2020 as evidence that the Defendant has not established extraordinary and compelling reasons for release. (ECF 202, Ex. 5) As a matter of course, I am not bound by the Acting Warden's decision. Further, I am perplexed by the Acting Warden's summary denial of the request. In his March 26, 2020 memorandum, the Attorney General identified six criteria that would qualify an inmate to release for home confinement. Those criteria include the age and vulnerability of the inmate, the security level of the facility holding the inmate, the inmate's conduct in prison, the inmate's score under PATTERN, whether the inmate has a demonstrated and verifiable re-entry plan, and the inmate's crime of conviction. See Attorney General Memorandum dated March 26, 2020, available at https://www.justice.gov/file/1262731/download
The Acting Warden's letter does not seem to make an individualized assessment as is required by the A.G. Memo. There is no discussion, for instance, of the Defendant's conduct in prison and whether he has a verifiable re-entry plan.

*See also, United States v. Mazzo,* 2020 WL 3410819 (D. Conn. June 22, 2020) (extraordinary and compelling reasons do not exist where the defendant has asthma serious enough to require the use of multiple inhalers, but which medical records demonstrate the BOP is managing); *United States v. Wheeler*, 2020 WL 2801289, at * 3 (D.D.C. May 29, 2020) (denying Compassionate Release because mild asthma does not constitute an extraordinary and compelling reason); *United States v. Perez*, 3030 WL 3639739 (S.D. Cal. July 6, 2020) (finding that "mild intermittent asthma" does not create such a high risk of COVID-19 that it warrants release); *United States v. Harding*, 2020 WL 2988955 (D. Conn. June 4, 2020); *United States v. Towel*, 2020 WL 2992528 (E.D. Pa. June 4, 2020); *United States v. Brown*, 2020 WL 2812776 (E.D. Mich. May 29, 2020); and *United States v. Crawford*, No. , 2020 WL 2537507 (W.D. Va. May 19, 2020).[7]

However, there are additional factors to consider. The Defendant asks this Court to also consider his exemplary efforts at rehabilitation during his eleven years of incarceration as well as the thwarting of his participation in the RDAP program. The record indicates that the Defendant has been a model inmate while in the BOP's custody. The Defendant represents that he has not been subject to any disciplinary matters (ECF 202), an assertion the Government does not dispute. The BOP characterizes the Defendant as "minimum security" level and a "low risk recidivism level." (ECF 202) I also recognize that the Defendant has devoted his time during incarceration to educating himself. He has completed Automotive Service Excellence ("ASE") courses in transmission, brakes, suspension / alignment, electrical systems, engine performance, and auto engine rebuild. (ECF 196). He has also completed a 210-hour welding certificate program and taken courses in accounting, financial planning and business law. (ECF 188)

---

[7] The cases the Defendant relies on are distinguishable. For instance, in *United States v. Gorai*, 2020 WL 1975472 (D. Nev. Apr. 24, 2020), the court granted compassionate release where the defendant suffered from asthma, but the record indicated that the defendant was using his inhaler more than prescribed, he was not able to receive breathing treatments despite request, and he was unable to self-care. There are no such indications here. *See also, United States v. Tran*, 2020 WL 1820520 (C.D. Cal. Apr. 10, 2020) (defendant had not been receiving inhaler from BOP and was "in dire need of his medication")

Additionally, the Defendant has been stuck at FTC Oklahoma City "in transit" since February 27, 2020. (ECF 188, p. 3) Had the Defendant's transfer to the RDAP program been effectuated, he would be just a few months short of completing the program with placement in a residential reentry program within a few months. It also appears that FTC Oklahoma City, as a Federal Transport Center, lacks some of the support systems that other prisons provide. (ECF 188, p. 4)

Considering the Defendant's asthma, his lack of access to his medical records to establish the severity of his asthma,[8] the Defendant's exemplary record while incarcerated, his demonstrated efforts at education and rehabilitation, and the thwarting of his being able to participate in the RDAP program (with no indication from the Government that the program will be re-started), I find that the Defendant has established "extraordinary and compelling" reasons for compassionate release. *See United States v. Cruz*, 2020 WL 3265390 (D. Ore. June 17, 2020) (find extraordinary and compelling reasons supporting compassionate release in the absence of any medical condition, in light of FCI Lompoc's rate of COVID-19 infection, that the defendant had served 43 of 48 months of his sentence, had excellent performance while in prison, earned his GED and completed the RDAP program) and *United States v. Blye*, 2020 WL 3064225 (W.D. Wash. June 9, 2020) (engaging in a "holistic" consideration of whether extraordinary and compelling reasons for compassionate release exist and finding that, the defendant's heightened COVID-19 risk, together with the only 5 months left on his sentence, and compelling family circumstances satisfied the requirement).

(b) Factors set forth in Section 3553(a)

I must also consider the factors set forth in section 3553(a), to the extent that they are applicable and whether such a reduction is consistent with the applicable policy statements issued

---

[8] I note that the Government did not respond to the Defendant's assertions concerning the number of inmates and staff at FTC Oklahoma City that have tested positive for COVID-19. Nor has it identified any particular practices that FTC Oklahoma City has in place to minimize the risk to the Defendant. I note that, as of July 14, 2020, the BOP records indicate that 83 inmates have tested positive. See https://www.bop.gov/coronavirus/index.jsp

by the Sentencing Commission. The Government urges that such considerations mandate the denial of the request for relief. In particular, citing to the Defendant's extensive criminal history, the Government contends that the Defendant remains a danger to society. Certainly, the Defendant has an extensive criminal history. Indeed, he was designated a "career criminal" at sentencing. The Government also urges that recidivism is likely in this instance.

I remain concerned with the nature of circumstances of the offense and with the Defendant's long criminal history, particularly because it includes the use of violence. Yet, there is no indication that the Defendant has been subject to disciplinary actions while incarcerated. "Disciplinary record in prison bears on this assessment and is illustrative of character." *United States v. Ladson*, 2020 WL 3412574, at * 8 (E.D. Pa. June 22, 2020). Further, the Defendant used his time while incarcerated to obtain occupational training. A court should "consider the inmate's participation in prison programming in tandem with the inmate's disciplinary record." *Ladson*, 2020 WL 3412574, at * 8.  I find persuasive the Defendant's certification in ASE classes and welding as well as his efforts to learn financial literacy. He also has a demonstrated re-entry plan living with his partner and their son. He also has an offer of employment. (ECF 188, at *5-6) It is clear that he has a "supportive family who will help [his] reentry into the community." *Id*. Further, I am persuaded by the BOP's designation of the Defendant as a "minimum security level" and of him as a "low risk recidivism level." (ECF 202) In light of the Defendant's rehabilitative efforts while incarcerated, the apparent absence of any disciplinary conduct while incarcerated, and his supportive family, I find that the Defendant is not a danger to the community.

I also find that reducing his sentence is consistent with section 3553(a) factors. Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other

correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the need to avoid unwarranted sentence disparities; and (5) the need to provide restitution to any victims of the offense. 18 U.S.C. 3553(a). Considering the "nature and circumstances of the defendant," I find that his rehabilitation and good conduct weigh in favor of a sentence reduction. Additionally, as my colleague recently noted, "[i]f generalized (albeit legitimate) concerns about the dangers of guns and drugs were enough to bar … compassionate release, almost no one would be eligible." *Sommerville*, 2020 WL 2781585, at * 12. I must also consider the "need for the sentence imposed." A sentence should be "sufficient, but not greater than necessary." While I do not debate the seriousness of the Defendant's crimes, I believe that "the significant dangers" that the Defendant "faces as an incarcerated person suffering from [asthma] during the COVID-19 pandemic – does not undermine the seriousness of his crime or mean others will not be deterred from committing similar crimes." *Id.*, at *10. Further, his efforts at continued education weigh in favor of a reduction. As to the remaining considerations, the Government has not indicated that granting the motion will create unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct and the need to provide restitution to any victims of the offense is inapplicable.

As another district court in the Third Circuit recognized, "it is difficult to overstate the severity of the COVID-19 outbreak and the global crisis that society is facing in light of this unprecedented public health crisis." *United States v. Catanzarite*, 2020 WL 2786927, at * 3 (D. N.J. May 29, 2020). After careful consideration, and based upon the record before me, I conclude that the Defendant would not endanger his community if released and that the 3553(a) factors weigh in favor of a sentence reduction. Consequently, the Defendant's sentence is reduced to time served. The term of supervised release remains intact. Further, his supervised release conditions should be modified in order to ensure, if able, his participation in the Transitional Drug Abuse Treatment ("TDAT") program.

The Government has requested that, should the motion be granted, the Bureau of Prisons should be allowed to place the Defendant in a 14-day quarantine period and to conduct medical clearance before release, in order to minimize the possible spread of COVID-19 from the Defendant to the general public. (ECF 202) The Government represents that this period of time will also allow the BOP to "fulfill its obligations under certain federal statutes." *Id.* While this request seems reasonable, I note that the Defendant has already been tested at least once for COVID-19 with negative results. If his second test has been completed, and is negative, the need for a period of confinement at the BOP is reduced. Nevertheless, the Court recognizes the BOP's need for arranging transportation and for notifying local entities of the Defendant's release. Consequently, the BOP is ordered to release the Defendant as soon as is practical.

THEREFORE, this 20th day of July, 2020, it is ordered that Defendant's Emergency Motion for A Reduction in Sentence (ECF 188) is GRANTED.

BY THE COURT:

*Donetta F. Ambrose*

Donetta W. Ambrose
United States Senior District Judge